SARTAIN, Judge.
This is an action against the defendant physician for damages allegedly sustained during and as a result of plaintiff’s detention in the Southeast Louisiana Hospital at Mandeville. Plaintiff alleged that his confinement was caused by a coroner’s commitment order which was falsely signed by the defendant as an examining physician, when in fact the defendant had admittedly never seen or examined the plaintiff. Preparation of this commitment order was *893 begun on Friday, June 25, 1965, and was completed with the signature of District Judge Frederick S. Ellis on Monday, June 28, 1965.
However, the coroner observed the plaintiff, after the latter’s wife had signed a statement that plaintiff was “mentally deranged”, on Friday afternoon and, believing that plaintiff’s behavior and apparent state of mind indicated the need for immediate care, he execúted a “coroner’s emergency detention” form and caused the plaintiff to be taken immediately to the hospital.
The trial judge held that, although defendant had falsely signed the “coroner’s commitment” form, plaintiff’s confinement was caused solely by the “coroner’s emergency detention” form and therefore the defendant was not liable for any resulting damages. We agree that the original confinement did not result from the wrongful act of the defendant, but we do find that the form he falsely signed was responsible for a wrongful apprehension and detention of plaintiff occurring later. Thus, for reasons hereinafter stated, the judgment of the lower court is reversed insofar as it holds defendant completely free from liability.
Plaintiff has appealed contending that the coroner alone does not have the authority to commit a person, because L.R.S. 28:52, relative to a coroner’s commitment, requires an application accompanied by a certificate of the coroner and one other qualified physician stating that they have examined the patient and that he is in need of observation or care. The approval of a district judge is also required for this type of civil commitment.
We think the answer to this argument is clearly stated in L.R.S. 28:52.1 which reads as follows:
“§ 52.1 Detention
For the purpose of complying with R.S. 28:52 the coroner is hereby authorized and directed to detain the patient by confining him in any state hospital or parish jail or private mental hospital for a period not to exceed thirty days or until he is committed to a state or private hospital for the mentally ill or his release is ordered. The superintendent of any and all state hospitals is hereby directed to receive such patients for detention as herein set forth.”
This Section does not authorize the coroner alone to order the actual commitment of a person but merely authorizes a detention of such a person until a valid commitment order or form may be obtained in compliance with the provisions of L.R.S. 28:52. If a valid commitment order is not obtained within thirty days, such person shall not be detained any longer pursuant to that detention order.
In the instant case, plaintiff was taken to the hospital on Friday, June 25, 1965, and was released on July 16, 1965, less than thirty days later, on convalescent leave status. He was never readmitted to the hospital and received an automatic discharge the following year on July 27, 1966. It thus appears that the “coroner’s emergency detention” order was still in effect when plaintiff was released on convalescent leave status and that the invalid “coroner’s commitment” form bearing defendant’s signature had no causal relationship to the plaintiff’s detention. It cannot be said that but for the defendant’s signature on the commitment form plaintiff could not have been held for up to thirty days, pursuant to the coroner’s detention authority.
Plaintiff contends that he was not officially admitted until Monday, June 28, 1965, the day when the “coroner’s commitment” form was signed by the district judge. However, of all the hospital records introduced at trial, including personal history forms, requests for consultation, doctors’ and nurses’ order sheets, clinical summaries and progress notes, only one form certified plaintiff’s admission on June 28. All other records showed not *894 only that the date of admission was June 25, but also that the reason therefor was a coroner’s emergency detention order. Furthermore, there is no showing that the completed “coroner’s commitment” form was delivered to the hospital on the same day it was signed by the judge, June 28, or that it was in any way the cause of plaintiff’s admission to the hospital.
We therefore agree with the trial judge that the defendant was not responsible for any injuries claimed by plaintiff for his confinement from June 28 through July 16, 1965.
The invalid coroner’s commitment form was, however, filed in the hospital records and was the basis of a letter written by Dr. Daniel J. Sprehe, Clinical Director of the Southeast Louisiana Hospital, to the Sheriffs’ Offices in Orleans and Jefferson Parishes. Dated August 3, 1965, the letter read as follows:
“Gentlemen:
The above patient [KEATING, Daniel L.] is on a Coroner’s commitment to this hospital. It has been détermined that he should be returned immediately. Attached is a copy of his Convalescent Leave papers.
“Thank you for your cooperation.”
It is clear that this letter was written more than thirty days after plaintiff’s admission to the hospital and that the coroner’s detention order had expired. It is also clear from the letter itself that Dr. Sprehe relied on the invalid “Coroner’s commitment” in believing that the hospital still had authority over the plaintiff. As a result of this letter, plaintiff was arrested by two officers in Jefferson Parish and was, as he described it, put “in the lockup on the Airline, next to Schwegmann’s.” He said, “I sat on a cement floor all night because every bed was taken. Roaches and everything else crawling all around and the next day I was moved to some other place and eventually transfered across to St. Tammany hospital again * * He was not readmitted, however, but was released and allowed to go on his way.
We are firmly convinced that this incident would never have occurred but for the coroner’s commitment form falsely signed by defendant and upon which Dr. Sprehe relied in requesting plaintiff’s apprehension and return.
With respect to quantum we have reviewed the cases cited by appellant and ap-pellee and are of the opinion that there should be judgment herein in favor of the plaintiff and against the defendant for such damages in the amount of $3,500.00.
Accordingly, for the above and foregoing reasons the judgment of the lower court is reversed and judgment is rendered herein in favor of the plaintiff-appellant and against the defendant-appellee in the amount of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars. All costs are assessed against defendant-appellee.
Reversed and rendered.